IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DESMOND KEELS,** : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 21-CV-2271** |
| : | |
| **MS. CARNEY BLANCHE,** *et al.*, : | |
| Defendants. : | |

**MEMORANDUM**

**GOLDBERG, J.**                                                                                      **DECEMBER 10, 2021**

Plaintiff Desmond Keels, who is currently incarcerated at the Curran Fromhold Correctional Facility, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, based on the conditions of his confinement while he was housed at the Philadelphia Industrial Correctional Center ("PICC"). (ECF No. 2.) He has also filed a Motion for Preliminary Injunction. (ECF No. 4.) For the following reasons, Keels's Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 8. He will be granted leave to file an amended complaint. Keels's Motion for Preliminary Injunction will be denied.

**I.      FACTUAL ALLEGATIONS**[1]

Keels names as Defendants (1) Blanche Carney, the Deputy Commissioner of the Philadelphia Department of Prisons, (2) Michelle Farrell, the Warden at PICC, (3) Mr. Williams, the Deputy of PICC, and (4) John/Jane Doe, the Keefe Supervisor of PICC responsible for the

---

[1] The allegations set forth in this Memorandum are taken from Keels's Complaint. The Court notes that Keels has filed several documents since filing his Complaint. (*See* ECF No. 8 (styled "Amended Complaint," but addressing Keels's efforts to obtain a six-month inmate account statement); ECF No. 10 (providing notice of change of address and describing conditions at current facility); ECF Nos. 11 and 12 (requesting information about proceeding with claim and describing conditions at current facility).) The Court does not consider these filings as intended to supplement the Complaint. To the extent they contain claims Keels wishes to pursue, he may include those claims in his amended complaint.

operations of the Keefe Commissary in the Philadelphia Department of Prisons. (ECF No. 2 at 2.) All of the Defendants are sued in their official and individual capacities. (*Id.*) According to the Complaint, on August 8, 2020, Keels filed a grievance based on prices in the commissary at PICC. Thereafter, he alleges that the Defendants spoke to him and promised that commissary prices would be reduced. (*Id.* at 3.) He did not, however, receive a formal response to his grievance, despite several requests, including a request to Defendant Carney, in which he requested that his communication with her be considered an appeal of his initial grievance and that his grievance be considered exhausted. (*Id.*) Keels also circulated copies of his grievance throughout the prison and solicited other prisoners to submit complaints. He claims that immediately thereafter, he received threats from the Defendants and other staff members and his cell was searched and copies of his grievance confiscated.

Keels alleges that on or about October 19, 2020, he suffered a psychotic episode unrelated to this Complaint. Keels attempted suicide twice over the next ten days and was taken to Jefferson Hospital for treatment. Beginning on November 5, 2020, Keels received fifteen days of disciplinary time in solitary confinement in a Restricted Housing Unit at PICC ("RHU") for attempting suicide. Keels claims that after the disciplinary time expired, he remained in the RHU as a form of retaliation. As a result, Keels contacted the Pennsylvania Institutional Law Project, whereupon he was released to the general population. (*Id.* at 3.) Specifically, he was released to a single cell for mental health reasons.

Keels alleges that on December 2, 2020, he received a commissary bag with $9.00 worth of food missing with a note indicating his account would be credited. Keels alleges that he filed a grievance but received no response. (*Id.* at 4.) He further alleges that on December 10, 2020, he filed a request slip regarding the credit issue, but received no response. He claims that the

Defendants circulated a sign-up sheet to inmates seeking reimbursement for missing commissary items, and that he signed the sheet but did not receive the money or the missing items. (*Id.*)

Keels alleges that on December 15, 2020, a Philadelphia price update form was provided by the Defendants adding a 6% sales tax on prices that Keels had already complained were too high. (*Id.*) Many prisoners filed complaints about the commissary prices, and many prisoners heard Keels talking to the Defendants about the complaints. Keels claims that it is well known to the Defendants that he is mentally ill and that he is a state prisoner from Norristown State Hospital who was receiving psychotropic medication and occasional counselling and who was housed alone. Keels alleges that when he was moved from his single cell in maximum security to a double cell in medium security, he tested positive for COVID 19. Keels "asserts that he was poisoned by Defendants to exacerbate his mental health condition and increase suicide attempts to fatality." (*Id.*)

Keels claims that Defendant Carney failed to take any action to protect Keels or other prisoners from price gouging at the commissary. He further claims that Defendant Farrell "enforced, approved, signed off on excessive commissary prices seeking a return from inflation on all products." (*Id.*) He also claims that Defendant Williams benefitted from price gouging "with Federal grant money, personal gain from excess monies from commissary items." (*Id.* at 5.) Keels also claims that John/Jane Doe was a supervisor at Keefe Commissary who had direct knowledge of the price gouging, sales tax, fraud, and money laundering that the Defendants were engaged in and, rather than correct the problem, participated in the illegal activities for profit at prisoners' expense. (*Id.*) Keels claims that all Defendants were aware of and participated in the illegal activities related to the commissary even after he raised the issue through a grievance. (*Id.*)

Although prices at the commissary appear to be his primary focus, Keels also raises allegations about other conditions at PICC and events that occurred there. He claims that since he

3

requested *in forma pauperis* status to file a civil suit, he has been placed in solitary confinement pending the outcome of his criminal matter and placed in a cell with other prisoners in retaliation by the Defendants. (*Id.*)

Keels also claims that the Defendants choose which prisoner calls are considered local calls which prisoners need not pay for, but not all numbers with local area codes are considered local calls, so prisoners are denied access to those phone calls. (*Id.* at 6.)

Keels also asserts violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Religious Freedom Restoration Act ("RFRA"). (*Id.* at 6.) He contends that Muslim inmates are not permitted to participate in the Eid feasts, which are important components of their religion. (*Id.*) However, he also alleges that the feasts are permitted, but that high commissary prices prevent some prisoners from purchasing the necessary food. (*Id.*) Keels asserts that the PDP has a "hot food' program which permits prisoners to purchase lunch and/or dinner for a specified price once per week at the prisoner's expense. (*Id.* at 7.) He suggests that food for the Eid feasts should be provided in the same way as food under the Hot Food program. (*Id.* at 8.)

Keels next describes what he asserts are Equal Protection violations. First, he notes that county prisoners pay higher prices for the same items as state prisoners. He also claims that detainees pay more reasonable prices for phone calls than convicted prisoners. (*Id.* at 9.) Keels includes a discussion of the legal principals associated with Equal Protection claims. (*Id.* at 9-10.)

In a section of the Complaint titled "Prisoners With Disabilities Act/Mental Health Care," Keels claims that he has been diagnosed with "cannabis use disorder - severe, social personality disorder, schizophrenia, and intermittent explosive disorder." (*Id.* at 11.) He asserts that the Defendants violated his Eighth Amendment rights in that they intended to cause him harm and knew of a risk that could have been prevented if they had answered his grievance about commissary prices instead of increasing prices. (*Id.*)

In a section of the Complaint titled "Pennsylvania State Tax Law," Keels asserts that the prison commissary policy has actually caused him harm. He claims that the Defendants double and sometimes triple costs and sales tax in order to gain capital for personal gain "in their individual and official capacity." (*Id.* at 12.) Keels also asserts that after he requested a six-month account statement to file a civil lawsuit, he was moved to a different section of the jail, moved from single cell to double cell status, lost his employment, was denied access to the law library to litigate his criminal appeal and civil complaint, and was intentionally exposed to COVID 19. (*Id.* at 12-13.) He seems to reiterate his earlier claim regarding prices of phone calls. (*Id.* at 13.)

Keels includes what appear to be corporate by-laws governing cash distributions and tax distributions that are seemingly unrelated to this complaint. (*Id.* at 13.)

In a section of the Complaint titled "Coronavirus 19 Related Protective Measures" Keels alleges that instead of providing wash rags, soap, towels, and face masks weekly, the PDP raised prices on these items in the commissary leaving prisoners with no choice but to purchase them at high cost. (*Id.* at 14.) He claims that cleaning supplies were supposed to be provided but were not, and, again, prisoners were forced to purchase these items at inflated prices. Keels claims that he is not receiving mandated out of cell time because he has been placed on administrative custody for filing a civil complaint. (*Id.*) He also asserts that health care is rarely provided. (*Id.*) He posits that the federal funds associated with the COVID 19 relief prisoners are supposed to receive is being withheld by the PDP and funneled to the Defendants. (*Id.*)

Keels claims that, in violation of his Eighth Amendment rights, he was deliberately exposed to COVID-19 when he was housed at the Detention Center on State Road after the facility was closed by the Mayor of Philadelphia due to Health Hazards. (*Id.* at 15.)

As relief, Keels requests compensatory damages from each Defendant for failing to prevent the injuries he suffered, punitive damages, a declaratory judgment that all of the acts complained

of are illegal and unconstitutional, attorneys fees and costs, an Order requiring the Defendants to (1) release Keels from solitary confinement to the general population, (2) abide by the 6% state tax on all items sold by the PDP, (3) allow prisoners to participate in Eid-al-Fitr and Eid-al-Adha meals, and (4) make all phone numbers with Philadelphia area codes free calls. (Id. at 17-18.)

Attached as Exhibits to Keels's Complaint are grievance related documents, commissary receipts, a Price Update Sheet, a request slip for money return, an incomplete religious diet request form, a consent for hospital services, and a sick call slip. (*See* ECF No. 2-1.)

## II.     STANDARD OF REVIEW

Keels was previously granted leave to proceed *in forma pauperis*. (*See* ECF No. 9.) Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Keels is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011). The Third Circuit recently explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted). Dismissals under Rule 8 are "'reserved for those cases in which the complaint so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

### III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Keels's Complaint must be dismissed.

### A. Declaratory Relief

Keels requests a declaration that the conduct of the Defendants was in violation of the United States Constitution. However, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (per curiam) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Keels's request for declaratory relief, accordingly, must be dismissed.

### B. Injunctive Relief

Keels has also filed a motion for preliminary injunctive relief. (ECF No. 4.) Therein, he requests that this Court enter an Order addressing injuries he alleges he has suffered as a result of the conditions of his confinement at PICC. (*Id.*) The motion must be denied.

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

Here, Keels cannot establish either that he is likely to succeed on the merits, or that he is likely to suffer irreparable harm in the absence of preliminary relief. For the reasons discussed below, Keels's Complaint must be dismissed because it does not state a plausible claim against the named Defendants. He also cannot establish that he is likely to suffer irreparable harm in the absence of preliminary relief, because he is no longer incarcerated at PICC, where the conditions giving rise to his motion existed. Indeed, this circumstance renders Keels's motion moot. *See Fantauzzi v. Wetzel*, Civ. A. No. 18-5166, 2019 WL 4543095, at * 4 (E.D. Pa. Sept. 18, 2019) (finding claim for injunctive relief moot because plaintiff-prisoner was no longer incarcerated at the facility at which the conduct giving rise to his request for injunctive relief occurred, and plaintiff alleged no continuing contact with the defendants and no continuing violations by those parties). Keels requests injunctive relief based on events that occurred while he was incarcerated at PICC. However, Keels is currently incarcerated at the Curran Fromhold Correctional Facility. In the absence of allegations that he is enduring the same violations at his current facility, his request for injunctive relief is moot. *See also Oliver v. Thornburgh*, 587 F. Supp. 380, 381-82 (E.D. Pa. 1984) (holding that plaintiff's transfer to another prison facility mooted his claims for injunctive relief). Accordingly, Keels's motion for injunctive relief is denied.

### C. Personal Involvement of the Defendants

In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Additionally, for supervisory officials, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Read liberally, the gravamen of Keels's claim is that prices at the PICC commissary are too high. He appears to allege both that the high prices themselves resulted in violations of his constitutional rights, and that his grievances and complaints about the prices resulted in retaliatory conduct that separately violated his rights. However, the Court's consideration of the merits of Keels's claim is impeded by his pleading. Throughout his Complaint, Keels refers to the Defendants collectively and does not clearly identify which Defendants are responsible for which conduct. It would be difficult for any of the Defendants to meaningfully respond to Keels's Complaint because it is not clear what each Defendant is alleged to have done and how each Defendant is liable to Keels. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants"

"fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). Accordingly, the Complaint fails to comply with Rule 8 as pled.

Moreover, Keels's use of the collective "Defendants" does not attribute any conduct to any individual defendant. *See Lawal*, 546 F. App' x at 113 (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims). Keels make no individualized allegations at all against the Defendants related to most of the conditions discussed in the Complaint. With regard to the commissary prices, Keels alleges the following as against each Defendant individually: he claims that Defendant Carney failed to take any action to protect Keels or other prisoners from price gouging at the commissary, that Defendant Farrell "enforced, approved, signed off on excessive commissary prices seeking a return from inflation on all products," that Defendant Williams benefitted from price gouging "with Federal grant money, personal gain from excess monies from commissary items," and that John/Jane Doe was a supervisor at Keefe Commissary who had direct knowledge of the price gouging, sales tax, fraud, and money laundering that the Defendants were engaged in and, rather than correct the problem, participated in the illegal activities for profit at prisoners' expense. (ECF No. 2 at 4-5.) These allegations are not sufficient to state a plausible claim against any of these Defendants related to the "price gouging" scheme. Similarly, Keels's submission of a grievance to Carney, without more, does not state a basis for her liability. *See Alexander v. Gennarini*, 144 Fed. App'x. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability).

Keels has not alleged how each of the Defendants was involved in the events described, and so has not stated a plausible claim against any of them. *Rode*, 845 F.2d at 1207; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Keels's claims will be dismissed. However, because the Court cannot conclude that he will not be able to state plausible claims, he will be granted leave to file an amended complaint.

### IV.    CONCLUSION

For the reasons stated, Keels's Complaint will be dismissed pursuant to § 1915(e)(2)(B)(ii) and Federal Rules of Civil Procedure 8, and he will be granted leave to file an amended complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An appropriate Order follows.