## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESMOND KEELS,                          :
    Plaintiff,                        :
                                      :
    v.                                :         CIVIL ACTION NO. 21-CV-2271
                                      :
MS. CARNEY BLANCHE, *et al.*,            :
    Defendants.                       :

## MEMORANDUM

GOLDBERG, J.                                                    AUGUST 11, 2022

Plaintiff Desmond Keels, a pretrial detainee[1] who is currently incarcerated at the Curran

Fromhold Correctional Facility ("CFCF"), has filed a *pro se* Second Amended Complaint

("SAC").  (ECF No. 17.)[2]  The SAC, raising claims pursuant to 42 U.S.C. § 1983, alleges

violations of Keels's constitutional rights.  For the following reasons, the Court will permit Keels

---

[1]      The publicly available docket in *Commonwealth v. Keels* reflects that on May 24, 2021, Keels entered a negotiated guilty plea to charges of murder, aggravated assault, and possession of an instrument of crime.  He is awaiting sentencing.  *Commonwealth v. Keels*, No. CP-51-CR-107351-2005 (C.P. Phila.).  Keels filed his original Complaint on May 7, 2021, before pleading guilty to the charges against him.

[2]      Keels filed an Amended Complaint in response to the Court's December 10, 2021 Order. (*See* ECF No. 16.)  Subsequently, he filed a document that was docketed as a motion, presumably based on Keels's transmittal letter.  (ECF No. 17 at 1.)  However, the document itself bears a caption and is titled "Amended Complaint."  (*Id.* at 2.)  The Court considers this Second Amended Complaint to be the operative pleading in this case because an amended complaint, once submitted to the Court, supersedes the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

to proceed on his retaliation claim against Defendants Richards, Rogers and Ryan, and dismiss the remainder of his claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  He will be granted leave to file a third amended complaint.

## I.      FACTUAL ALLEGATIONS

Keels's original Complaint named the following Defendants: Blanche Carney, the Deputy Commissioner of the Philadelphia Department of Prisons ("PDP"); Michelle Farrell, the Warden at the Philadelphia Industrial Correctional Center ("PICC"); Mr. Williams, the Deputy of PICC; and John/Jane Doe, the Keefe Supervisor of PICC responsible for the operations of the Keefe Commissary in the PDP.  (ECF No. 2 at 2.)  All of the Defendants were sued in their official and individual capacities.  (*Id.*)  Upon screening the Complaint, the Court dismissed it in its entirety pursuant to § 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 8.  Keels was granted leave to file an amended complaint.  (ECF No. 13.)  His SAC is now ripe for screening.

Keels names the following Defendants in the SAC:  Corrections Officer ("CO") Ms. R. A. Richards, CO Mr. E.G. Rogers, and Sgt. Ms. Ryan, who are alleged to be assigned to CFCF.  (*Id.* at 2.)  "Keefe Supervisor" is alleged to be the liaison between the PDP and Keefe Commissary responsible for contracts and ordering.  (*Id.*)  Warden Michelle Farrell and Deputy Warden Williams are both alleged to be assigned to PICC and to be responsible for, *inter alia*, day to day operations, training, and executing policies.  (*Id.*)  Keels also names PDP Commissioner Blanche Carney, and John/Jane Doe, who is alleged to be a PDP employee.  (*Id.*)

As with his original Complaint, much of the SAC is devoted to Keels's allegation that the Keefe Commissary ("Keefe") unlawfully inflates prices and overcharges inmates for basic commissary items.  Keels states that he "cannot understand [ ] how is it that Keefe Commissary can charge different prisoners different prices for the same product even when it goes against state law and statute governed by the constitution the highest law in the land.  That is what this civil suit

is about." (*Id.* at 9.)  Specifically, he claims that Keefe charges inmates within the Department of Corrections ("DOC") less than it charges inmates incarcerated by the PDP for the same items.  It appears that the price-gouging conduct Keels complains of occurred while he was at PICC. However, he alleges that the same conditions exist both at CFCF, where he is currently incarcerated. (*Id.* at 8.)

Keels alleges that Defendants Williams, Farrell, Carney, and Keefe Supervisor participate in a formal bidding process to obtain commissary products, and that they obtain the products at list price from the manufacturers.  (*Id.* at 11.)  However, he also alleges that these Defendants receive advantageous pricing on items and charge Keels and other prisoners a mark-up on goods sold in the commissary.  Keels alleges that the PDP pays more for food than the DOC, but does not explain the Defendants' role in this circumstance.[3]  (*Id.*)  He also alleges that these Defendants enjoy personal financial rewards as a result of their participation in the commissary negotiation process.  (*Id.*)

Keels claims that he and other prisoners have a constitutional right to certain commissary items such as stamps, envelopes, paper, pens, and phone time.  (*Id.* at 13.)  He further claims that he and other prisoners have a constitutional right to certain personal care items from the commissary under the Eighth Amendment.  (*Id.* at 14.)  He does not allege that these items have been withheld, but rather suggests that the prices for these items are too high.  (*Id.* at 14 ("Inmates should be given sufficient allowance such as general labor for prisoners starting at $9.00 per inmate not forcing inmates to choose between purchasing hygienic supplies and essential legal supplies is

---

[3]     Keels asserts that these Defendants have violated the Robinson-Patman Act by engaging in price discrimination because sales of products of the same grade and quality were made to the PDP and the DOC through interstate commerce.  (*Id.* at 12.)  He does not allege that the price differential occurred at the time the items were sold to PDP and DOC.  Rather, he alleges that the price differential impacts prisoners who are the end users of the items.

unacceptable.").)  Keels also alleges that "prisoners" can only purchase food through the commissary at prices set by the Defendants.  (*Id.* at 16.)  He does not allege, however, that the commissary was the only source of food or that he himself  was otherwise deprived of food.  (*Id.*)  Keels alleges that the PDP does not provide clothing and that "prisoners" are required to purchase clothing from Keefe.  (*Id.*)  He does not allege that he was forced to purchase clothing from Keefe.

Keels alleges that there is no alternative source of the foregoing items available to prisoners.  (*Id.* at 15.)  Based on these allegations, he asserts claims for Equal Protection and illegal price discrimination under the Robinson-Patman Act.  (*Id.*)  Keels also alleges that a statutory price cap exists, seemingly as a matter of state law, and that the alleged mark-ups on the commissary goods violate Keels's Due Process rights by depriving him of his protected property interest in commissary goods at capped prices.  (*Id.* at 16.)  He claims that the conduct of Defendants Carney, Farrell, Williams, and Keefe Supervisor—inflating commissary prices—amounts to "deliberate indifference."

Keels also raises new claims in the SAC—he alleges that as a result of the filing of his original Complaint based on a price-gouging scheme at PICC, he has been subject to retaliation. (*Id.* at 4.)  He alleges that on August 18, 2021, when he arrived at CFCF, Defendants Richards, Rogers, and Ryan searched his property and confiscated various items, all while threatening Keels about his pending lawsuit.  (*Id.* at 4-5.)  Specifically, Keels alleges that Defendant Rogers confiscated Keels's property, Defendant Richards provided him with a "Confiscated Valuables Receipt No. C0106256V," and Defendant Ryan was the supervisor on duty who failed to intervene and prevent the alleged retaliatory conduct.  (*Id.* at 5.)  Keels alleges that twenty-one books were confiscated, and that Defendant Rogers told Keels that the books were being confiscated because of Keels's complaint against Rogers's supervisors.  (*Id.*)  Keels alleges that he requested an investigation into the incident, that he requested that the books be returned because he needed them

to defend himself in pending *pro se* litigation, and that he filed a grievance about the confiscation of his books.  (*Id.* at 5-6 and Exhibits D, E, and F to SAC.)  Keels alleges that he received no response to these requests.  (*Id.* at 6.)  He further alleges that as of the date of the filing of the SAC, his books had not been returned.  (*Id.*)  Based on this conduct, Keels asserts claims based on the handling of his grievances, and claims for stolen property, denial of access to the courts, First Amendment retaliation, and Fourth Amendment search and seizure.  (*Id.* at 10)

Based on the foregoing, Keels asserts claims against Defendants Carney, Farrell, Williams, Keefe Supervisor, and John/Jane Doe based on the alleged price gouging scheme, and claims against Defendants Rogers, Richards and Ryan based on their confiscation of his books.  (*Id.* at 18.)  Keels also asserts claims against Defendants Carney, Farrell, and Williams based on their failure to respond to his grievances.  (*Id.*)  He requests immediate return of his property and an Order requiring Defendants Carney, Farrell, Williams, John/Jane Doe and Keefe Supervisor to abide by state sales tax laws for commissary items.  He also requests an award of compensatory and punitive damages.  (*Id.*)

## II.    STANDARD OF REVIEW

Keels was previously granted leave to proceed *in forma pauperis*. (*See* ECF No. 9.) Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask

only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Keels is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Keels's claims fall into two categories—claims arising from an alleged price-gouging scheme engaged in by some of the named Defendants, and claims related to retaliation engaged in by other named Defendants when Keels pursued a civil lawsuit to redress harm from the price-gouging scheme. He asserts that as a result of the named Defendants' conduct, his constitutional rights have been violated. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Keels's claims based on commissary pricing, and his claims based on confiscation of his property and handling of his grievances will be dismissed with prejudice. Keels's access to courts claim will be dismissed without prejudice and he will be permitted to amend this claim. Keels's First Amendment retaliation claim will be allowed to proceed.

### A.   Claims Based on Commissary Prices

Keels alleges that Defendants Carney, Farrell, Williams, and Keefe Supervisor engaged in a scheme whereby they purchased commissary items at either list or more advantageous prices, then sold them to prisoners at inflated prices. Additionally, he alleges that prisoners in the custody of the PDP are habitually charged more than prisoners in the custody of the DOC for the same

items.  Keels asserts Due Process, Equal Protection and federal price discrimination claims against these Defendants as a result.  (SAC at 18.)  He also alleges that their conduct violated state law. For the following reasons, Keels's federal claims will be dismissed with prejudice and his state law claims will be dismissed without prejudice.  Keels will be granted leave to amend his state law claims.

### 1.    Due Process Claims

Keels alleges that he has a protected interest in purchasing commissary items at a capped price, and charging him more violates his right to Due Process.  However, Keels has no such constitutionally protected right.  "Inmates have no federal constitutional right to be able to purchase items from a commissary. . . . Accordingly, the Plaintiff has no federal constitutional right to purchase items from the Jail commissary at any particular price or to have the vendor restrained from charging even exorbitant prices." *Travillion v. Allegheny Cty. Bur. of Corr.*, No. 07-0928, 2008 WL 2699988, at *2 (W.D. Pa., July 7, 2008) (citing *Bagwell v. Brewington-Carr*, No. 97-714, 2000 WL 1239960, at *3 (D. Del., Aug. 25, 2000), *aff'd*, 32 Fed. Appx. 31 (3d Cir. 2002); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980), *cert. denied*, 446 U.S. 942 (1980) (order adopting Report and Recommendation that inmate's constitutional claims based on "exorbitant" commissary prices be dismissed)).  Because he has no right to purchase commissary items at any particular price, Keels cannot state a plausible Due Process claim against the named Defendants based on inflated commissary prices and these claims must be dismissed with prejudice.

### 2.    Equal Protection Claims

Keels also claims that charging PDP prisoners more than DOC prisoners for the same items violates his rights under the Equal Protection Clause.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction

the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).  Keels alleges that the complained-of price differential is based on whether a prisoner is held by the DOC or the PDP, and impliedly concedes that they are not similarly situated.  (*See* SAC at 9) ("Plaintiff understands that pre-trial detainees or prisoners in the county jail obtain more rights and privileges [sic] than convicted prisoners or D.O.C. prisoners.")  *See also Talbert v. Keefe Group*, No. 18-5111, 2018 WL 6435334, at *2 (E.D. Pa., Dec. 7, 2018) (dismissing former inmate's Equal Protection claim based on exorbitant and differing commissary prices and noting that "Philadelphia inmates are not similarly situated with Commonwealth inmates.  Different facilities.").  Accordingly, Keels's Equal Protection claims based on differing commissary prices is not plausible and must also be dismissed with prejudice.

### 3.    Claims Under the Robinson-Patman Act

Keels also alleges that the Defendants violated the Robinson-Patman Act, § 2(a) of the Clayton Act, 15 U.S.C. § 13(a).  (SAC at 7.)  "By its terms, the Robinson-Patman Act condemns price discrimination only to the extent that it threatens to injure competition." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993); *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1271 (3d Cir. 1995) ("Price discrimination standing alone" is not

illegal under the statute *per se*, rather "in order to establish a *prima facie* violation of section 2(a), 'a reasonable possibility of harm, often referred to as competitive injury, must be shown.'" (quotation omitted)).

Here, the Court cannot determine whether a "competitive injury" has or is likely to occur in these circumstances where the alleged discriminatory pricing is imposed on the end users of the commissary products. Moreover, the statute itself provides for statutory defenses to price discrimination in certain circumstances, evidencing Congress's intent not to "outlaw price differences that result from or further the forces of competition." *Brooke Grp. Ltd.*, 509 U.S. at 220. In his SAC, Keels alleges that the degree of rights held by the inmates in question—DOC as opposed to PDP, the latter alleged to have more rights and privileges than the former—correlates with the alleged price differentials and may explain, and perhaps allow the alleged price discrimination. *See also Talbert*, 2018 WL 6435334, at *2-3 (dismissing Robinson-Patman Act claim asserted by former inmate based on price discrimination as between DOC and PDP inmates). Keels has not identified a competitive injury resulting from the named Defendants' conduct and has identified a basis for the price differentials paid by different inmates. As such, he has not stated a plausible claim under the Robinson-Patman Act. This claim will be dismissed with prejudice.

### 4.    State Law Claims

Keels also asserts that the conduct of the Defendants violated otherwise unidentified state laws relating to caps on commissary prices and imposition of state tax on purchases from the commissary. (SAC at 9.) His claim, however, is conclusory and undeveloped, consisting of little more than the legal assertion that the Defendants violated the unidentified statutes. Keels's claims based on violation of state law will be dismissed as not plausible. He will be granted leave to amend these claims.

### B.      Claims Based on Denial of Food, Clothing and Sundries

Keels's claim that Defendants Carney, Williams, Farrell, and Keefe Supervisor engaged in a price-gouging scheme appears to challenge Keels's conditions of confinement.  Keels alleges that prisoners cannot afford various items offered at the Keefe Commissary because of inflated prices, and he identifies specifically food, clothing, and personal hygiene items.  (SAC at 13-14, 16.)  Keels alleges that the conduct of the named Defendants constitutes deliberate indifference prompted by the Defendants' desire for profit.  (*Id.* at 17.)

Because Keels was a pretrial detainee at the time he filed this civil action, the Due Process Clause of the Fourteenth Amendment governs his claims.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).   "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim.  *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether

10

restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that  "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Keels contends that prisoners cannot purchase certain items from the Keefe Commissary because the prices are so inflated.  His claim is not plausible, however, because he (a) does not describe any instance in which he could not afford to purchase an item at the commissary, and (b) does not allege that he has been otherwise deprived of food, clothing, or personal hygiene items. As a result, he has not alleged a sufficiently serious deprivation to satisfy the objective component of the appropriate constitutional inquiry.  In turn, he has not set forth sufficient facts to establish a plausible constitutional violation, and this claim must be dismissed.  Keels will be granted leave to amend this claim.

### C.    Claims Based on Confiscated Property

Keels asserts constitutional claims against Defendants Rogers, Richards, and Ryan based on their confiscation of his books upon his arrival at CFCF.  He alleges that, despite requests at the time he filed the SAC, his books had not been returned to him.  (*Id.* at 18.)   For the reasons that follow, Keels will be permitted to proceed with his First Amendment retaliation claims against these Defendants.  His claim based on the confiscation of his property and his Fourth Amendment claims will be dismissed with prejudice.  His access to courts claim will be dismissed without prejudice and he will be granted leave to amend this claim.

### 1.    Claims based on confiscated property

To the extent that Keels seeks to assert a claim based solely on the confiscation of his property, a prisoner detained by the City of Philadelphia cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n

unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)). While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are exceptions to this grant of immunity. *See id*. § 8542(b). One such exception is that a political subdivision like the City of Philadelphia may be held liable for damages that would be otherwise recoverable under common law and that were caused by an individual, not protected by governmental immunity, who caused the injury while acting within the scope of his duties. Because, under these provisions, Keels has a meaningful post-deprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed with prejudice.

### 2.   Fourth Amendment Claim

Keels asserts a Fourth Amendment claim based upon Defendants Rogers, Richards, and Ryan's confiscation of his books upon his arrival at CFCF. (SAC at 10.) However, this claim is not plausible as prisoners have a diminished right to be free from searches and seizures while incarcerated. *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property"). The confiscation of books in the context of a search conducted upon Keels's arrival at CFCF—even if conducted with retaliatory intent—falls within the broad scope of conduct permitted to maintain safety and order. This claim will be dismissed with prejudice.

### 3.      Access to Courts Claim

Keels alleges that Defendants Rogers, Richards, and Ryan confiscated many of his books upon his arrival at CFCF, and that this interfered with his "ability to file or prosecute a legal action." (SAC at 10.)  He asserts a claim for denial of access to the courts.  (*Id.*)  "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury."  *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415.  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id*.

Keels refers to several cases that he alleges he is pursuing *pro se*, both criminal and civil. (SAC at 5.)  He does not describe any "nonfrivolous" or "arguable" claims that have been lost or otherwise impacted in any of these cases by the loss of his books.  In other words, he failed to plausibly allege an actual injury caused by the deprivation of his books.  Accordingly, he has not stated a plausible access to courts claim and the claim will be dismissed.  Because the Court cannot

at present determine that Keels will not be able to state a plausible access to courts claim, he will be granted leave to amend this claim.

### 4.    Retaliation Claim

Keels alleges that on August 18, 2021, when he arrived at CFCF, Defendants Richards, Rogers, and Ryan searched his property and confiscated various items, all while threatening Keels about his pending lawsuit.  (*Id.* at 4-5.)  He asserts a retaliation claim based on this conduct.

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a lawsuit or grievance is constitutionally protected conduct.  *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).  Keels has alleged a plausible claim for retaliation and this claim will be allowed to proceed.

### D.    Claims Involving Grievances

Keels alleges that he filed grievances both in connection with the alleged price-gouging at the Keefe Commissary and in connection with the confiscation of his books.  (SAC at 3-4, 5-6.) He attaches several completed grievance forms as Exhibits to his SAC.  He alleges that he did not receive responses to his grievances.  To the extent Keels seeks to pursue a constitutional claim based on the handling of his grievances, these claims fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).  Accordingly, the facts alleged by Keels about grievances do not give rise to a

plausible basis for a constitutional claim and will be dismissed with prejudice because to amend this claim would be futile.  *See also Woods v. First Corr. Med. Inc*., 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).

## IV.   CONCLUSION

For the reasons stated, the Court will permit Keels to proceed on his retaliation claim against Defendants Richards, Rogers, and Ryan.  The remainder of his claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as set forth herein.  He will be granted leave to file a third amended complaint as set forth in more detail in the Order accompanying this Memorandum. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  The Court will not direct service of Keels's retaliation claims at this time to give him to option of filing a third amended complaint.